MIRIAM L. BELL, Respondent, *v.* FREDERICK C. METZ, JR., Appellant.

First Department, November 2, 1928.

R. *Randolph Hicks* of counsel [*Lloyd F. Thanhouser* with him on the brief; *Satterlee & Canfield*, attorneys], for the appellant.

*Emanuel S. Cahn*, for the respondent.

O'MALLEY, J. Plaintiff, the divorced wife of the defendant, seeks to enforce an alleged contract, whereby she claims the defendant agreed to pay her $2,000 a year for a period measured by his ability so to do, and in addition to furnish her a modest home for the use of herself and the three children of the parties. Defendant's offer relied upon is contained in a letter of September 27, 1922, after plaintiff's remarriage, and at a time when she was living in Reno, Nev., with her second husband and had with her the three children. Consideration for defendant's promise was to consist of plaintiff's agreement to return to New York with the children and to care for them after such return. She had the option of returning with or without her second husband, defendant's purpose being that he would have the plaintiff and her children near him.

The charge of the court clearly indicates that the case was submitted upon the theory thus outlined.

Plaintiff has secured judgment in the sum of $10,000. She offered no evidence respecting the nature of the home which defendant was to furnish or of what it should consist. The verdict, based on this contract, seems to represent only the amount for which the defendant obligated himself for the first five years, the contract having been finally made in 1923, and the verdict having been returned in 1928. Plaintiff asserted her right to enforce the contract for her life.

In our view the evidence does not establish the agreement relied upon or support the verdict upon which the judgment is based.

The parties were married in 1909. In 1920 differences arose which resulted in a separation agreement. This had been preceded by an action for separation brought by the plaintiff, a counterclaim therein for divorce by the defendant, and also an action by the defendant against one Rolker for alienation of affections. By the separation agreement defendant was awarded custody of the children, who were to reside with him, with certain rights of visitation and temporary custody from time to time reserved to the plaintiff, and defendant obligated himself to support them. In addition, he agreed to pay the plaintiff for her individual support so long as she remained unmarried, the sum of $2,000 a year. There were other provisions for additional payments to plaintiff on account of the children and also one for an increase in payments to plaintiff in the event the defendant's income exceeded $12,000 annually. The litigations between the parties and between the defendant and Rolker were discontinued.

Shortly after the separation agreement the plaintiff, with the defendant's consent and his financial support, went to Reno to obtain a divorce which she finally secured in June, 1921. Immediately thereafter she returned to New York and during the summer months of 1921 resided with the defendant and the children in New York. In September of that year the plaintiff took one of the children on a trip west, but returned to New York in December and remained over the Christmas holidays. The expense of the trip was paid by the defendant.

In January, 1922, the plaintiff took the two youngest children to Reno, for which expense the defendant paid. This trip was for the purpose of plaintiff's remarriage to one Frederick S. Bell, who was some twenty years her senior. It was an unhappy marriage from its inception and finally resulted in the plaintiff securing her second divorce on April 24, 1923.

Notwithstanding plaintiff's marriage to Bell, correspondence

between the plaintiff and the defendant continued. The defendant, notwithstanding his rights under the separation agreement, had permitted the plaintiff to take the children with her and they resided with her in her new home with Bell. The defendant's letters to the plaintiff give evidence of his love for the children, and some, of a remaining affection for the plaintiff. Until December, 1922, the defendant continued to pay the plaintiff $2,000 a year toward the support of the children at which time the amount was increased to $2,400. He also sent her a Christmas present of $500 that year.

In the summer of 1922 the defendant himself became engaged and remarried in November of that year. In his letter of September twenty-seventh, already adverted to, and which contains the offer upon which the plaintiff relies, the defendant referred to his approaching marriage and stated that it " will make no difference in our relations. Smiggs [his *fiancée*] understands that." He offered some general advice concerning plaintiff's domestic troubles and continued: " One of the few pleasures left is the joy I have in helping if only slightly. I hope always to be able to give to you as well as my children although you may not need it soon."

He spoke of raising additional money on mortgage and expressed the hope of being able to send money for a Christmas present already referred to. He then said: " Remember as long as I produce I am ready to pay you 2,000 a year *for the four of you* and buy a modest little home here in New York if you wish it. If Mr. B. would come on with you so much the better. ·

" It would be a great satisfaction to. have you all near me for there would be many ways in which I could share what little I have." (Italics ours.) Mr. B. referred to was plaintiff's second husband.

The plaintiff claims to have answered this letter and, such answer not having been produced by the defendant, plaintiff was permitted to testify to its contents. She said in substance that she informed the defendant that it would be impossible for her to come to New York because of her husband's business which he did not wish to give up; that with respect to her second marriage " conditions were not as I thought they would be," and that she " didn't know just how things were going to be," and that she was sending for her mother to come and assist in the care of the children. She further testified that she told the defendant in this letter that " if I could possibly manage to come on in the spring, I would." It is plaintiff's claim that the offer made by the defendant in his letter from which quotation has just been made, while not accepted immediately, was, on the other hand, not refused, and the defendant held it open until the plaintiff finally decided to accept and come to New York.

Her return to New York in June, 1923, after she secured her divorce, constituted, it is claimed, her acceptance of defendant's offer, and thus a valid and binding contract on the defendant's part to pay her in her own right the sum of $2,000 a year for the balance of her life, provided defendant is possessed of sufficient funds so to do.

Assuming for the moment that the jury was warranted in finding whatever offer was made was held open by defendant until plaintiff's final decision to come to New York, we think there was a failure to establish the agreement relied upon. Defendant's offer, if any, was to pay $2,000 a year and furnish a modest home, not for the plaintiff's use in caring for the children, but as support and maintenance " for the four." His letter so read.

This interpretation finds support in the situation in which the parties found themselves and the surrounding circumstances. The defendant at the time was obliged to support the children under the terms of the separation agreement, his obligation to support the plaintiff having ceased upon her remarriage. To that end the defendant was paying $2,000, which he increased to $2,400 late in 1922. This sum no doubt was intended in the main for the discharge of the defendant's obligation toward the children, notwithstanding that in part it may have been intended as voluntary assistance to the plaintiff.

The correspondence between the parties that followed in no way militates against this view. We may assume, without conceding, that the defendant's generous attitude toward the plaintiff and his desire to assist her in the unhappy state in which she found herself following her second marriage, justified the plaintiff in believing that the defendant would continue to assist her when she secured her divorce and returned to New York with the children. The defraying of all expenses of the plaintiff and the children and that of the plaintiff's mother from Reno to New York gives ample evidence of the defendant's generosity and of his desire to have the plaintiff return to New York so that he would have the children available to him. However, there is nothing in the correspondence, as we read it, which would indicate that the defendant ever intended to do more than to continue to contribute to the support of the children as he had been doing under the terms of the separation agreement, and in addition give voluntary and gratuitous aid to the plaintiff as long as he was able.

On the other hand, there is much in the letters written by the plaintiff to the defendant before her return, which indicates that she herself did not feel that the defendant had obligated himself to any definite plan so far as she herself was concerned after her return to New York. In her letter of April 25, 1923, written at

a time when her divorce from Bell seemed assured, she complained of the burden that she had assumed in having with her the three children and stated that it was a mistake. With reference to plans for the future, she stated to the defendant: " Now I am willing to do what I can so write & state just what you want *if I can I will accept* but previous I have taken more than I was capable of." (Italics ours.) In this letter she speaks of the possible alternative of remaining in Reno and says: " I shall have to know just the position I am supposed to fill if I come East. I am not capable of taking all responsibility of the three on the allowance you make you will have to share some of the cares I am not able to go out to work & care for my children & home." And further, she stated: " I must know your plans before May 20 as if I remain here shall have to look for other quarters."

In addition her attorneys, who represented her in the divorce case, wrote on April 25, 1923, a letter to the defendant with her knowledge and approval in reference to the plaintiff's care of the children and the burden that she assumed in caring for them. It was stated that all the defendant had been called upon to do in the past was to furnish money necessary for their support. The letter ends: " It would seem to me advisable that you and she have some definite agreement for the support of the children and for their custody, and I would be glad to take that matter up with you at any time."

While subsequent to the writing of the letter of September 27, 1922, the defendant in other letters referred further to establishing a home for the plaintiff and her children in the event that she should decide to bring them to New York, it appears that before she finally left, the defendant, under date of May first, had indicated that the children were to stop with him until some other plan was worked out, and that their rooms had already been prepared. In fact the plaintiff herself had indicated her desire that the defendant should take the children temporarily at least.

The defendant testified that plaintiff's reply to his letter of September 27, 1922, contained a positive refusal on her part to come to New York as suggested. She referred to the proposition as preposterous and based it upon the ground that her husband's business required him to live in Reno. We think the evidence as a whole supports defendant's version and that the plaintiff returned to New York after her divorce without feeling that the defendant was under any definite obligation toward her, but with the hope merely that his generosity might continue.

When the plaintiff reached New York, she was met by the defendant, who took the three children to his home; but the plaintiff

and her mother went to live with a friend. It is the plaintiff's claim that soon thereafter she called upon the defendant to perform the agreement sued upon, namely, to allow her $2,000 a year and to establish a home where she might take care of the children. She admits that the defendant repudiated the agreement and made a counter proposition to the effect that he would pay her $100 a month if she would allow him to have the children. The defendant's testimony was to the effect that the plaintiff at no time claimed that the agreement sued upon was made, and that it was understood between them that the children would be better off in the country with him, and that the plaintiff was to proceed to try and find some means of self support upon the defendant's promise to render her some assistance in the event that she succeeded in becoming self supporting.

The plaintiff admitted having received from her second husband, Bell, payments of $100 a month between August, 1923, and February, 1924, and thereafter payments aggregating $300 until the month of December, 1924, when payments entirely ceased.

Concededly the plaintiff proceeded to find employment. She and her mother first did sewing and then attempted to conduct a rooming house. Finally the plaintiff secured employment as a saleslady and was employed at the time of the trial with a salary of thirty-five dollars a week and commissions. It is significant that the plaintiff delayed bringing this action until 1926, notwithstanding that she claimed the defendant repudiated the agreement immediately upon her return to New York in June, 1923.

She first attempted by habeas corpus proceedings to secure possession of the children, her claim being that they were not being fairly treated by the defendant's second wife. Failing in this, she then instituted this action. But before its commencement and on January 24, 1926, she wrote the defendant, and among other things said: "I certainly am pleased to go back to work Monday & getting a better position, getting out into the world has helped me. I really don't think you ever thought I would make good but its one of the many things I have to be grateful to you for. Even the odds against me You mean more to me than you ever did. Only wish you were not so bitter & that we some day will be friends. So all I can say. God bless you Make you happy & give you the best the World can give. Again thank you."

There is nothing in writing showing that the plaintiff asserted any such claim against the defendant as she now sues upon. And from all the evidence in the case we are of the opinion that her action is a mere afterthought. She has recovered a judgment

in her own right in the sum of $10,000 based upon her claim that the defendant's obligation was to pay her for her own support $2,000 upon her bringing the children to New York and taking care of them for the defendant's benefit. Because the defendant refused to permit her to have the children and thus carry out the contract, she claims, nevertheless, to be entitled to the agreed amount. It is to be seen, however, that the defendant in taking the children into his own custody and household was doing no more that he was entitled to under the separation agreement.

Plaintiff places much reliance upon the defendant's testimony on the trial to the effect that until within two weeks of plaintiff's departure from Reno he had intended to furnish her a home and $2,000 a year. The plaintiff asserts a legal contract — an acceptance on her part of an offer made by the defendant. An intention to do an act is not an offer to do it. We think the evidence clear that the plaintiff did not accept any offer made by the defendant, and as already indicated, returned to New York, not in reliance upon any definite agreement, but because of her inability after her divorce to maintain herself in Reno and in the hope that the defendant's previous generosity toward her would continue.

In this view of the case we think that the verdict is not only against the weight of the evidence, but contrary to the evidence, and we, therefore, recommend that the complaint be dismissed.

The judgment and order should, therefore, be reversed, with costs, and the complaint dismissed, with costs.

MERRELL and PROSKAUER, JJ., concur; DOWLING, P. J., and MARTIN, J., dissent.

MARTIN, J. (dissenting). The parties to this action were married in 1909 and lived together for ten years. Three children were born to them. In May, 1920, differences arose; a separation agreement was entered into and within a few days thereafter the plaintiff moved to Reno where she began an action for divorce. The defendant paid her expenses to Reno as well as the expenses of the action. After she obtained the divorce he offered to pay certain amounts for her support and maintenance if she would leave Reno and live in New York. She came to New York as agreed but he failed to make the payments. She then brought this action to recover damages for breach of contract and has judgment on a verdict for $10,000.

While the plaintiff was in Reno she and the defendant corresponded regularly and they were most friendly. He telegraphed congratulations to her and her second husband upon the plaintiff's remarriage; and the defendant wrote that he regretted the plaintiff disapproved of his choice for his second marriage.

The defendant financed plaintiff and some of the children on journeys between New York and Reno and she sojourned at his house in Queens.

The plaintiff remarried at Reno in January of 1922. In September of that year, while living there with her three children and her husband, a Mr. Bell, she received a letter the material part of which is as follows:

" Remember as long as I produce I am ready to pay you 2000 a year for the four of you and buy a modest little home here in New York if you wish it. If Mr. B. would come on with you so much the better.

" It would be a great satisfaction to have you all near me for there would be many ways in which I could share what little I have."

The plaintiff says she wrote to the defendant in reply to his offer that it was impossible for her to come east at that time but that she could, possibly, do so in the spring. Thereafter letters passed between them. Respondent contends that appellant's letters and actions indicate that the offer was kept open and that she accepted and performed according to its terms with the result that a contract was made. Defendant failed to pay the plaintiff the $2,000 per year.

It must be noted that the defendant indicated no necessity of accepting the offer within any given time, but on the contrary, indicated that it remained good until plaintiff could come east.

In the desire to have the plaintiff and her children near him, the defendant not only offered to pay her $2,000 a year for her support and that of the children and to supply a modest home for them in New York, but went to the extent of suggesting that if her husband wished to come along that also would be agreeable to the defendant.

In the spring of 1923 the defendant repeated the offer, evidently having in mind the plaintiff's statement to him that she might be able to come in the spring, and on March 2, 1923, he wrote that at any time she desired to come east he would " turn Heaven and Earth to get the wherewithal together." The defendant did not feel at that time that his offer of September 27, 1922, had been rejected. On April twelfth the plaintiff wrote the defendant that she could not come east until school closed. The defendant insisted she should return to the east without further delay. This she did, as agreed between the parties, carrying out her part of the agreement.

Throughout the correspondence the defendant is found making inducements to his former wife to leave Reno and come to New York with the three children, so that they would be near him.

When the plaintiff wrote that she could not then come east, but in the spring she might be able to do so, the husband sent

her a letter in which he said: " Perhaps this Spring If I can sell either or both of the houses I'll be easier financially. However, if you decide *ever to come back east* I shall turn Heaven and Earth to get the wherewithal together. * * *

" Of course it would bring me much joy to have my babies near me and of course they need you too. * * *

" I was going to try to dispose of some excess furniture but if you think you're like to take up quarters East again perhaps I'd better not."

The plaintiff says she would not have come to New York had it not been for such inducements. She was not in a position to come when first requested to do so because her second husband's business prevented it. It is apparent from a later letter that defendant intended to continue to support her when she came east. This was emphasized by the letter of April twentieth, in which he said: " I suppose your mother will be returning east with you and *will have to be assisted also.*"

He also wrote: " When you come east you must not consider doing anything but running your home and bringing up the children. At least until things begin to look normal to you. Even then if a modest home and a tranquil existence suit you it might be well to consider that you've had your ' fling ' as you used to call it."

The correspondence establishes that the defendant induced his former wife to come east upon the promise of support. In fact, he admitted upon the trial that it was his understanding of the arrangement that he was to pay $200 a month, when his former wife came east for the support of herself and the children.

In addition, he paid all the expenses, including car fares from Reno to New York. He had been paying $200 a month while the plaintiff lived in Reno, and the only additional obligation he was agreeing to was that of a modest home. It should be borne in mind that the obligation to support the children was upon the husband and that all he was additionally offering voluntarily was to support the former wife; and this he evidently considered necessary, if she should comply with his request to come to New York to look after the children. There is no doubt that he induced this plaintiff to bring these children east through this promise to support them and that he then repudiated his obligation to furnish such support.

By the terms of the separation agreement he agreed to pay $150 monthly during the lifetime of his wife as well as certain other additional amounts, unless she remarried. During her stay in Reno he paid about $200 a month for the support of the plaintiff and the children.

The evidence shows that when the plaintiff arrived in New York, defendant took the three children from her, under the pretext that he was taking them temporarily. The plaintiff brought a proceeding to obtain their custody in which proceeding she was defeated. However, one of the children is now living with her.

The evidence sufficiently proved that the defendant entered into a contract with the plaintiff by which he induced her to come to New York by agreeing to support her and the three children who were to live with her and that he afterwards made compliance with the contract impossible.

The breach was on the part of the husband, he having prevented performance.

The judgment should be affirmed.

DOWLING, P. J., concurs.

Judgment and order reversed, with costs, and complaint dismissed, with costs.